## TRACY v. CALIFORNIA ELECTRICAL WORKS.

### Court of Appeal, First District; April 5, 1907.

90 Pac. 461.

**Sales—Action for Price—Breach of Warranty.**—In an action to recover the balance due on the contract price of an engine, where there was a defense of breach of contract and guaranty, and a cross-claim for damages, evidence considered, and held sufficient to sustain the finding of the court that certain knocking of the engine and flickering of the light produced by the electric plant run thereby were not caused by any defect of the engine, and that the engine was not defective.

**Appeal—Refusal of New Trial.**—The Appellate Court will not reverse an order of a trial court refusing a new trial for insufficiency of the evidence to support the findings of fact, if there is substantial evidence to support the findings of the trial court.

APPEAL from Superior Court, City and County of San Francisco; Frank H. Kerrigan, Judge.

Action by H. H. Tracy against the California Electrical Works. From a judgment for plaintiff, defendant appeals. Affirmed.

Frank M. Parcells for appellant; William S. Schooler for respondent.

HALL, J.—Appeal from order denying defendant's motion for a new trial.

Defendant entered into a contract in May, 1900, with A. C. Bilicki & Co., whereby defendant agreed to furnish and

install an electric light plant in the basement of the Hollenbeck Hotel, in the city of Los Angeles; said electric light plant to consist of a dynamo of a specified description, and an engine known as a "Shepard cross-compound, vertical noncondensing engine." Defendant, in order to carry out its contract with Bilicki & Co., entered into a contract with the Tracy Engineering Company, a copartnership (assignor of plaintiff), whereby the Tracy Engineering Company agreed to furnish the engine, and install both the engine and dynamo, which was furnished by defendant, in the Hollenbeck Hotel for a stipulated price. The contract between the defendant and the Tracy Engineering Company contained various stipulations concerning the engine, and among other things the following guaranty, to wit: "The party of the second part guarantees the material and workmanship entering into the construction of engine for one year, and any defects or flaws developing within the said one year from date of acceptance will be made good by the party of the the second part, unless it is shown that such breakage, flaws or defects were caused by unskillful management of the machinery during the said one year." The engine was furnished and the plant installed by the engineering company, and the engine was accepted by defendant on the third day of November, 1900, as completed and having run six days successfully, conditionally, however, upon the results of a test to be thereafter made as to economy and regulation; any defects found during that test to be made good, according to the contract. The electric plant, however, proved to be unsatisfactory; and after efforts, both by the engineering company and defendant, to discover the cause and to correct its defects, extending over several months, defendant was obliged to remove the plant from the hotel, and to pay damages in the sum of $1,650 to Bilicki & Co. Plaintiff, as assignee of the Tracy Engineering Company, brought this action to recover of defendant the sum of $1,284, being the alleged balance due on the contract price of the engine. Defendant for a defense pleaded a breach of the guaranty concerning the engine, and also, by leave of court, set up, by way of cross-complaint against the Tracy Engineering Company (said company having been made by order of court a party to the action), a breach of its contract and guaranty concerning said engine, and damages

resulting to defendant by reason thereof. Defendant claimed that the engine was defective, and that by reason thereof when in operation it caused a loud and continuous knock or pound, and also caused the lights generated to flicker. There is no dispute as to the fact that, after the acceptance of the engine, the lights generated by the electric plant did flicker, and that the engine, when operating the dynamo, did "knock" or "pound." Defendant claimed that the "knock" or "pound" was caused by defects in the engine, and that the flicker of the lights was caused by the "knock" or "pound," or, at any rate, by some defect in the engine; while the plaintiff and the Tracy Engineering Company claimed that the flicker of the lights was not caused by the "knock" or "pound," or by any defect of the engine, and that the "knock" or "pound" was not caused by any defect of the engine, but was caused by unskillful management of the engine. The court found against the contentions of defendant, and it is the action of the court in this regard that is attacked by this appeal.

Appellant urges with great earnestness that the evidence shows without conflict that both the flicker in the lights and the "knock" were caused by some defect in the engine. A careful examination of the record certainly discloses very persuasive evidence to the effect that both the "knock" and flicker of the lights were caused by some defect in the engine; but we also find substantial evidence supporting the conclusion that neither the "knock" nor the flicker were caused by any defect in the engine. Evidence was given on behalf of plaintiff that the engine was not defective when turned over to the engineer of the hotel, and was at that time working all right. Edward H. Minor, a mechanical engineer, who had charge of the work of installing the plant, testified that he ran the engine for about eleven days before turning it over to the engineer of the hotel. He first ran it five days, and then shut down to correct some trouble with the armature (a part of the dynamo), which caused some noise. After this was repaired, the engine was started again, and ran all right for six successive days, when it was turned over to the engineer of the hotel. During this time witness testified that there was not the slightest trouble or difficulty with the lights. The engine ran five days successfully, and then six days successfully, and everything ran correctly.

There was no unusual noise, and no flicker in the lights. "The material and workmanship which entered into the construction of that engine are first class. . . . . When I went away the engine was running all right. When I came back it was not, in my judgment. It had been misused or abused. . . . . I was conversant with the engine in its entirety, and knew it to be a first-class engine, and knew it was running in good order, and that everything was in first-class shape about it when I went away." H. N. Tracy, a member of the firm of the Tracy Engineering Company, and a mechanical engineer, testified that he first saw the engine in operation after it had been running five days. There was then a jar or bump, which he located in the armature shaft, and corrected. "When it started up there was no bump or knock discernible. It was started then again on the 28th of October. This engine was the quietest direct connection engine I had ever seen. It then ran all right for six days successfully, when we got the letter of acceptance on November 3d." He further testified that he returned in two or three weeks, when it was found that the lights flickered when the engine was examined, and subjected to certain tests by experts. He testified that he was convinced that the engine was all right, and that "I came to the conclusion that they had treated the engine shamefully. After a careful examination, lasting over quite a period of time, I am satisfied that the engine had nothing to do with the flicker of the lights." It was shown by certain tests that the revolutions of the shaft that imparted motion to the dynamo were uniform in speed. Edward S. Cobb, a consulting mechanical and hydraulic engineer, examined the plant in question as an expert, and testified that in his opinion there was no causal connection between the "knock" in the engine and the flicker in the lights; there was no rythmic connection between them. Other witnesses testified to this effect also. This witness also testified to certain alternating discolorations in the commutator bars in the dynamo, which always appeared after the dynamo had been run for a time, whereupon the flicker in the lights would appear. This witness gave his opinion that the flicker was caused by some fault in the dynamo. Clarence N. Cory, witness for plaintiff, professor of electrical engineering, and engaged also in the business of consulting electrical and mechanical engineering, was furnished with full data con-

cerning the tests and estimates made by Mr. Cobb and Mr. H. N. Tracy, respecting the engine and dynamo in question, made mathematical calculations based upon that data, and reached the conclusion that the disturbing cause of flicker of lights was located in the dynamo. He further said: "I took up the question of the engine tests, and I am satisfied that the flicker was not caused by the knock or pound of the engine, and the knock might be caused by many things, but in this case the engine did not produce the flicker. . . . . I should say that the knock would be caused rather from improper handling than from any inherent defect in the engine." John Lafferty, a witness for defendant, and an expert engineer, employed as such by the Hollenbeck Hotel, had charge of the plant for some time, and testified that he did not think the knocking was responsible for the flicker, although in another part of his testimony he disclaimed all knowledge as to what did cause the flicker. J. W. Milstead, a witness for defendant, and an expert steam engineer, worked on the engine for twenty-four days for defendant, testified to knock in engine, but said in regard to the engine: "There was not anything erroneous in its construction. There was not any knocking whatever so far as I know when there was no electricity generated. . . . . I don't pretend to say that the knock or noise affected the lights." W. H. Hanscom, also a witness for defendant, and an expert engineer, who examined the plant, testified: "A knock or pound in an engine that was being run for the first time I should not consider of any importance. I could not see that the jarring or knocking was directly or immediately the cause of the flicker." He also said that if, after the dynamo started up, the flicker gradually appeared, it might be due to the engine, or it might be due to the generator. Other witnesses testified that the flicker did gradually appear in this way. He also testified to the alternating discolorations in the commutator bars, and that this showed defects in the commutator bars.

Other evidence was given of a similar character to that which we have above set forth; but we think we have specified enough to show that there is in the record sufficient evidence to support the findings of the court that the engine was not defective, and that neither the flicker in the lights nor the "knock" in the engine were caused by any defect in

the engine. It is true, as we have before stated, that there is in the record much persuasive evidence supporting a contrary conclusion; but this court cannot reverse the order·of the trial court for insufficiency of the evidence to support the findings of fact, if there be any substantial evidence supporting·the findings made by the trial court.

No other point being suggested why the order should ·be reversed, the same is affirmed.

We concur: Cooper, P. J.; Kerrigan, J.